# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* A. M. BROWN, Minor.

UNPUBLISHED
January 16, 2018

No. 339171
Ingham Circuit Court
Family Division
LC No. 16-000344-NA

Before: MURPHY, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Respondent appeals as of right from an order terminating her parental rights with respect to her child under MCL 712A.19b(3)(c)(*i*), and (3)(g). We affirm.

On March 7, 2016, petitioner alleged that conditions existed to cause the child to come within the court's jurisdiction under MCL 712A.2(b)(1) and (b)(2). The child was born three months premature (on January 7, 2016), and respondent admitted that she lacked the ability to provide necessities for the child, and that she had a mild intellectual disability and other personality disorders. Additionally, respondent did not have a suitable housing environment for the child.

Respondent's initial barriers to reunification were emotional stability, parenting skills, housing, and employment, and her services program included a psychological evaluation, case management, the Kevin Moody House (a program that aids with independent living and job skills, and provides counseling services for housing and financial matters), a Community Mental Health wellness program, and other wellness programs. Respondent had also received a list of local subsidized housing resources, received assistance with applying for emergency housing funds, and received transportation to Volunteers of America to apply for housing assistance. Respondent also received assistance in applying for cash assistance and food stamps, and she received transportation to job interviews.

Respondent left the Kevin Moody House after about two months, and while she was there, she struggled to meet expectations, stayed out late, and did not complete her work. Respondent began supportive visitation with Child and Family Charities on July 19, 2016, and her caseworker observed compliance and improvements in her parenting sessions after completing the program. Respondent was also referred to Willow Tree for parenting classes on April 14, 2016, but did not follow through, and she was referred for parenting classes with Cristo Rey on February 9, 2017, but failed to attend. Respondent's caseworker explained that

-1-

respondent needed additional classes "because after she completed it she started becoming inconsistent in her parenting times." Respondent missed a total of 35 of 90 parenting visits.

Respondent was referred for substance abuse assessments which she did not attend, and she missed 65 drug screens between June 2, 2016 and April 2017, testing positive eight times for marijuana, and also for cocaine on other occasions. Respondent failed to maintain contact with her caseworker and was also untruthful at times, and further failed to obtain suitable housing throughout the proceedings.

The trial court concluded that the services provided to respondent were appropriate but that she elected not to continue participation in them. The court found that respondent made progress at times, but overall, that clear and convincing evidence supported termination of parental rights under MCL 712A.19b(3)(c)(*i*), and (3)(g).

## I. REASONABLE EFFORTS TOWARD REUNIFICATION

Respondent argues that petitioner was aware of respondent's intellectual disability, was obligated to modify its procedures to accommodate such, and failed to make reasonable efforts toward reunification. We note that this issue is unpreserved because respondent failed to raise a challenge to the services when the court adopted the case service plan. *In re Terry*, 240 Mich App 14, 27, 610 NW2d 563 (2000) ("[t]he time for asserting the need for accommodation in services is when the court adopts a service plan, not at the time of a dispositional hearing to terminate parental rights."). Unpreserved issues are reviewed for plain error affecting a substantial right. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). Forfeiture under the plain error rule is avoided where (1) error occurred; (2) the error was clear or obvious; and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), citing *United States v Olano*, 507 US 725, 731; 113 S Ct 1770; 123 L Ed 2d 508 (1993). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." 460 Mich at 763.

"Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). "Reasonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances . . . ." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (internal quotation marks omitted, emphasis in original). In *In re Hicks*, 500 Mich at 86, the Court stated:

> Absent reasonable modifications to the services or programs offered to a disabled parent, the Department has failed in its duty under the [Americans with Disabilities Act, 42 USC 12101 *et seq* ("ADA")] to reasonably accommodate a disability. In turn, the Department has failed in its duty under the Probate Code to offer services designed to facilitate the child's return to his or her home, see MCL 712A.18f(3)(d), and has, therefore, failed in its duty to make reasonable efforts at reunification under MCL 712A.19a(2). As a result, we conclude that efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA.

Respondent relies on *In re Hicks* and *In re Newman*, 189 Mich App 61; 472 NW2d 38 (1991), for the general proposition that petitioner did not make enough of an effort to achieve reunification considering respondent's intellectual disability.

In *Newman*, this Court recognized that parents with a limited intellectual capacity may need "hands-on" instruction. *In re Newman*, 189 Mich App at 66. In *Hicks*, the Supreme Court most recently ordered a remand in a termination matter that similarly involved an intellectually disabled parent. *In re Hicks*, 500 Mich at 82-83, 91. The respondent similarly relinquished custody of her children because she could not care for them, and she continued to inconsistently participate in the services made available to her. *Id*. at 83-84. The respondent continuously inquired throughout the proceedings about whether she would receive a service plan through the Neighborhood Services Organization ("NSO") to accommodate her intellectual disability, and the request was never granted. *Id*. at 84. After the trial court ordered termination, the respondent appealed to this Court, arguing that the petitioner's reunification efforts failed to accommodate her intellectual disability as required under the ADA. *Id*. In addition to determining that the issue was preserved for appeal, this Court concluded on the merits that because "the case service plan never included reasonable accommodations to provide respondent a meaningful opportunity to benefit," the [petitioner] had "failed in its statutory duty to make reasonable efforts to reunify the family unit." *Id*. at 85, quoting *In re Hicks*, 315 Mich App 251, 269-271; 890 NW2d 696 (2016).

Here, unlike in *Hicks*, respondent never requested specific or accommodated services. The trial court recognized at a dispositional hearing that there was "a mild intellectual disorder," noting that "it doesn't appear to affect her ability to function" and that "she could be an effective, appropriate parent" "as long as she receives treatment." The court then concluded that "reasonable efforts are being made." At the termination hearing, the court did not directly speak to whether reasonable efforts towards reunification had been made.

Respondent's case service plan is quite distinguishable from that in *Hicks*, in that it did not entirely omit specific services to provide reasonable accommodations for respondent's intellectual disability. The record indicates that petitioner determined that respondent's mild intellectual disorder did not affect her ability to function as a parent, and that she could be an effective and appropriate parent. Thus, respondent's intellectual disability was not a barrier to reunification as long as she participated in the services available to her.

In *Hicks*, however, the Court did not seem concerned with petitioner's assessment of the significance of the parent's intellectual disability, but appeared concerned with the accommodations made available. See *In re Hicks*, 500 Mich at 86. It follows that it is the presence of the intellectual disability that necessitates reasonable accommodations, and not the significance of the impairment. See *id*.

Although the record does not indicate that during the course of the proceedings respondent ever requested specific accommodations as did the respondent in *Hicks*, respondent's case service plan included programs through Community Mental Health (CMH), and additionally, the Kevin Moody House program was tailored to address the impairments respondent may have suffered as a consequence of her intellectual disability, i.e., it provided services directed at building independent living skills and job skills, and it provided counseling

services in financial matters. Respondent was also involved in a supportive visitation program. She also received Gateway Services, and services through the Wellness Program, the Wellness RN Program, and the Wellness Client's Service Specialist Program.

There is little in the record to explain the details of these services and how they were responsive to respondent's intellectual impairment. However, we note that respondent's impairment was mild and not regarded as a significant barrier to reunification. While a better record could have been made of the accommodations made for respondent and the services provided respondent, and a better record would likely have been made had respondent raised this issue below, respondent has failed to establish plain error with respect to the accommodated services provided.

## II. STATUTORY GROUNDS FOR TERMINATION

It is not clear whether respondent is also arguing that the trial court clearly erred in determining that the statutory grounds had been established to terminate respondent's parental rights. However, we find no error.

This Court reviews a circuit "court's decision that a ground for termination has been proven by clear and convincing evidence" for clear error. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "A decision qualifies as clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.*, quoting *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). This Court gives "due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Clear and convincing evidence creates "in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). The "[e]vidence may be uncontroverted," but fall short of clear and convincing. *Id.* "Conversely, evidence may be clear and convincing despite the fact that it has been contradicted." *Id.* (internal quotations omitted).

Parents have a due process interest in the "companionship, care, custody, and management of their children." *In re JK*, 468 Mich at 210. "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). Accordingly, "[o]nly one statutory ground for termination need be established." *In re Olive/Metts Minors*, 297 Mich App at 41. If the trial court's termination of parental rights under one statutory basis is erroneous, but proper under another statutory basis for termination, the erroneous determination is harmless error. *In re Powers Minors*, 244 Mich App 111, 118-119; 624 NW2d 472 (2000).

## A. MCL 712A.19b(3)(c)(*i*)

MCL 712A.19b(3)(c)(*i*) authorizes a court to terminate a parent's parental rights if it finds by clear and convincing evidence that

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The conditions that led to adjudication were respondent's failure to provide necessities for the child and an unfit home environment. Pertinently, respondent admitted she did not have necessities for the child, that she was on probation for assault, and that she had a mild intellectual disability.

At the termination trial, the court found that immediately following the child's birth, respondent and the father did not have necessities for the child and that they could not meet her needs. The court noted that respondent has mild cognitive issues in terms of her critical thinking and reasoning abilities, and that she is challenged in that regard, and noted respondent's other mental challenges (i.e., mixed personality, anxiety, and depressed mood). The court found "that the placement that [respondent] was in was excellent[,]" but that she abandoned it and did not follow through with her mental health services, and that she did not have suitable housing.

Although respondent's caseworker observed signs of improvement through the course of the parenting sessions with the Child and Family Charities program, respondent became very inconsistent in the sessions, and failed to attend additional parenting sessions though Willow Tree and Cristo Rey. Moreover, respondent missed 35 of 90 parenting sessions. Respondent also received assistance in applying for cash assistance and food stamps, and, although she did not receive assistance in acquiring a driver's license, she received transportation to job interviews. The record indicates that she obtained employment at Wendy's. Although at times respondent demonstrated improvement regarding her abilities to provide necessities for the child, the record indicates an overall lack of benefit from the services provided to respondent, and a general lack of the ability to be a parent and provide financial support.

Throughout the course of the proceedings, respondent did not obtain suitable housing. She had been living at the Gateway temporary shelter, which taught independent living skills and provided therapeutic services and housing, but she ceased participation in the program on June 21, 2016, and was having difficulties with meeting their expectations. Moreover, as of March 2017, respondent's living situation was still sporadic.

The record indicates that respondent received transportation to Volunteers of America to apply for housing assistance, received a list of local subsidized housing providers, and received assistance in applying for emergency housing funds. The record further indicates that respondent participated in the Kevin Moody House program, but that she left after two months, and that

while she was there she struggled to meet expectations, failed to complete her work, and was staying out late. Thus, in spite of the services available to her, respondent failed to obtain and maintain housing suitable for the child.

Because clear and convincing evidence supports the trial court's finding that the conditions that led to adjudication continued to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time, the trial court did not commit clear error in determining that termination was proper under MCL 712A.19b(3)(c)(*i*).

## B. MCL 712A.19b(3)(g)

The trial court also relied on MCL 712A.19b(3)(g), which authorizes a court to terminate a parent's parental rights if it finds by clear and convincing evidence that

> [t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

"A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

Respondent's case service plan pertinently required her to obtain employment and maintain a regular source of financial support, refrain from the use of illegal drugs, complete substance abuse treatment as directed, complete and cooperate with psychological examinations and services as directed, participate in parenting and counseling sessions, and cooperate with her caseworker. Respondent's general noncompliance with her case service plan is illustrated by her failure to participate in, and benefit from, the services offered to her.

The record suggests that a central focus of respondent's case service plan was her psychological and emotional health, and that she was demonstrating compliance with the mental health treatment offered around October 2016, but by January 2017 she was not engaged in the services offered. Testimony indicates that she failed to attend an intake assessment for her individual therapy, that she failed to attend two consecutive appointments after the scheduled assessment, and that her lack of contact with her therapist prompted the therapist to send a discharge letter. Respondent also failed to participate in a wellness program arranged through CMH, and although she completed one session, the record indicates she did not subsequently attend her psychotherapy. When asked what changed during the eight months preceding trial, the caseworker testified that respondent voluntarily left the mental health services that she was doing through CMH and that she was not doing the wellness program individualized therapy through CMH.

Respondent further failed to attend parenting programs provided through Willow Tree and Cristo Rey, and she missed a total of 35 out of 90 parenting visits. Further, the record indicates respondent was untruthful with the caseworker, and that she failed to maintain contact with her. Moreover, the caseworker explained that she was never able to refer respondent to a substance abuse counselor because respondent failed to complete a substance abuse assessment.

The record also indicates that, although she initially was compliant and tested negative during several drug screenings, respondent tested positive for marijuana at least eight times, tested positive for cocaine, and missed 65 screens between June 2016 and April 2017.

The evidence of respondent's general noncompliance and lack of benefit is uncontested. Although the record suggests that respondent, at times, began to demonstrate a benefit from the services offered (e.g., parenting skills, sobriety), she became inconsistent and demonstrated a general scheme of noncompliance with the case service plan. The record therefore supports the trial court's conclusion that respondent would not be able to provide proper care and custody within a reasonable time. Accordingly, the trial court did not commit clear error when it determined clear and convincing evidence supported the statutory grounds for termination pursuant to MCL 712A.19b(3)(c)(*i*) and (3)(g).

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Jane M. Beckering